556 F.2d 460
 Tomas F. RYAN, as Guardian of the Estate of Thomas H. Ryan,
Tomas F. Ryan, Individually, and Madeline F. Ryan, Appellees,
v.
FOSTER & MARSHALL, INC., a Washington Corporation; and Dixon
Rauch, Jr., Appellants.
Tomas F. RYAN, as Guardian of the Estate of Thomas H. Ryan,
Tomas F. Ryan, Individually, and Madeline F. Ryan,
Cross-Appellants,
v.
FOSTER & MARSHALL, INC., a Washington Corporation; and Dixon
Rauch, Jr., Cross-Appellees.
 Nos. 75-2674 and 75-2659.
 United States Court of Appeals,
Ninth Circuit.
 June 28, 1977.
 
 Bruce M. Hall (argued), Portland, Or., for appellants.
 Daniel J. Riviera (argued), Seattle, Wash., for appellees.
 Appeals from the United States District Court for the District of Oregon.
 Before KOELSCH, DUNIWAY and GOODWIN, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 These combined appeals arise out of an action for damages sustained in an improvident margin account opened by an alleged incompetent, at the solicitation of the defendant brokerage firm.
 
 
 2
 Plaintiffs are Tomas Ryan, guardian of the estate of Thomas Ryan, alleged incompetent, now deceased; Tomas Ryan, individually; and Madeline Ryan, the wife of the late Thomas Ryan.
 
 
 3
 Plaintiffs sued under the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., and the regulations made pursuant to that statute. The action included pendent state law and common law claims based upon alleged violations of statutory and common law duties owed by brokers to their customers.
 
 
 4
 Foster & Marshall, through its agent Dixon Rauch, sold Ryan 17,000 shares of Boise Cascade stock on a margin account. Foster & Marshall required Ryan to deposit approximately $121,000 within five to fourteen days from the date of the sale. The stock was held in two joint accounts: one was owned by Ryan and his wife Madeline, and one was owned by Ryan and his son Tomas. Within a few days after Foster & Marshall bought the Boise Cascade stock for Thomas Ryan, Madeline and Tomas signed the required documents.
 
 
 5
 Ryan was unable to deposit the margin requirement and the Boise Cascade accounts were liquidated. Meanwhile, the Boise Cascade stock had declined in value. Liquidation therefore did not produce the funds necessary to reimburse Foster & Marshall. The brokers then liquidated other accounts owned jointly by Ryan and his wife. As a result of these transactions, the Ryans sustained losses totalling $43,384.80.
 
 
 6
 At the trial, plaintiffs produced evidence that at the time of the sale Ryan was incompetent, and that Foster & Marshall knew or had reason to know he was incompetent. Accordingly, plaintiffs claimed that Foster & Marshall was liable for restitution and damages.
 
 
 7
 The jury found that Foster & Marshall was grossly negligent in its dealings with all the plaintiffs. The verdicts included damages covering cash losses, punitive damages, and, in the case of the wife and son, damages for mental suffering. The court ruled that the guardianship estate of Ryan could not recover damages for mental suffering and withdrew that issue from the jury.
 
 
 8
 The parties stipulated that the court could try the Securities Exchange Act claims without a jury. The court found that the defendants had not violated the federal and state securities laws.
 
 
 9
 Both sides appeal. We affirm in part and reverse in part.
 
 I. STATE AND FEDERAL SECURITIES ACTS
 
 10
 Plaintiffs contend that the trial court erred when it failed to find violations of § 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, or Rule 10b-5, (17 C.F.R. § 240.10b-5); of the Oregon Blue Sky Laws (ORS 59.135); of § 7 of the Securities Exchange Act, 15 U.S.C. § 78g; or of Regulation T of the Federal Reserve Board.
 
 
 11
 Specifically the court found that the defendant did not engage in an act, practice, or course of business which operated a fraud or deceit upon the plaintiffs so as to constitute a violation under § 10 or state law. With regard to the alleged violation of § 7 of the '34 Act and Regulation T of the Federal Reserve Board, both of which concern time extensions during which margin requirements must be satisfied, the court found that the defendant acted within statutory and regulatory requirements.
 
 
 12
 We cannot say that the trial court's findings of fact on the statutory counts are clearly erroneous. See Fed.R.Civ.P. 52(a). We therefore affirm the judgment for defendants on the statutory counts.
 
 II. COMMON-LAW NEGLIGENCE
 A. Actual Losses
 
 13
 The issues of common-law negligence, causation, and damages were submitted to the jury. To prevent a double recovery, the court prepared a special verdict form which limited the amounts which the jury could award each plaintiff. The verdict form inadvertently created many of the difficulties in this appeal.
 
 
 14
 The jury found the defendants grossly negligent, and apportioned to the plaintiffs damages within the limits of the verdict forms. After the verdict, the trial court was faced with a series of motions for a judgment n. o. v.
 
 
 15
 On the theory that the wife and son as individuals had no standing, the court set aside the verdicts in their favor. The court expressed the opinion that the wife and son had suffered no compensable loss as a result of the margin transactions. In the alternative, the court found that the wife and son had waived their right to recover their losses because they had contended at trial that their names had been wrongfully affixed to the margin accounts.
 
 
 16
 Under Fed.R.Civ.P. 8(e)(2) a pleader can assert alternative claims even if the claims are inconsistent. Therefore the court erred in its finding that the wife and son had waived any rights to recovery merely by taking inconsistent positions.
 
 
 17
 Furthermore, there was no basis for the trial court's conclusion that the wife had suffered no compensable loss in this case. While the record is unclear whether Madeline had any of her own separate funds in the Boise Cascade accounts, there was evidence that the joint accounts liquidated by Foster & Marshall to recoup its advances belonged jointly to Madeline and her husband. There is no question that the wife suffered loss.
 
 
 18
 The questions of causation were resolved by the jury against the defendants. The jury determined that Mrs. Ryan's loss was caused by the defendant's gross negligence with respect to her, apart from any failure to exercise due care toward Ryan. Because there was evidence to support the jury verdict, the special verdict in favor of wife for her actual loss of $11,679.39 must be reinstated.
 
 
 19
 We agree with the conclusion of the trial court that the son suffered no compensable individual loss in this case. Unlike Madeline, Tomas had no investment in the liquidated accounts, nor did he have a personal obligation that caused him to lose money in the margin transactions. Any contingent liability to which Tomas may have been exposed was extinguished when the liquidation of the accounts of Ryan and his wife made up the sums advanced by Foster & Marshall. Tomas Ryan's personal claim, therefore, as distinguished from his claim as conservator for his father's estate, had no basis in the evidence and could not be sustained.
 
 
 20
 If the legal issue of the son's claim had been determined by the trial court, as it should have been, before the case was submitted to the jury, the jury would have been free to award to Mr. and Mrs. Ryan the amount the jury might have found to be necessary to make the Ryans whole. Unfortunately, the verdict form made this impossible. However, this court has no authority to change the verdict. See 6A Moore, Federal Practice P 59.08(6), at 59-192 to 193 (2d ed. 1974). Nor do we feel that a new trial is mandated. The submission of the individual claims of Tomas Ryan was supported neither by law or by the evidence. While these claims no doubt caused some difficulty in the jury's allocation of the recovery to the other claimants, we are satisfied that the error in submitting Tomas' claim did not unduly prejudice the plaintiffs. To the extent that the error may have penalized the plaintiffs, they invited the error and cannot now object to the striking of claims that should not have been submitted.
 
 B. Mental Suffering and Punitive Damages
 
 21
 Defendants argue that it was error for the trial court to submit to the jury the plaintiffs' claim for mental suffering and punitive damages. Both sides agree that only actual damages can be recovered under the Securities Acts. See 15 U.S.C. § 78bb(a). Actual damages mean some form of economic loss. See Blackie v. Barrack, 524 F.2d 891, 909 (9th Cir. 1975), cert. denied, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).
 
 
 22
 However, the record shows that the jury awarded mental-suffering and punitive damages under the common-law claims submitted to the jury. Section 28(a) of the Securities Exchange Act, 15 U.S.C. § 78bb(a), preserves common-law remedies for common-law counts which are pendent to Securities Act claims. Flaks v. Koegel, 504 F.2d 702 (2d Cir. 1974); Coffee v. Permian Corp., 474 F.2d 1040 (5th Cir.), cert. denied, 412 U.S. 920, 93 S.Ct. 2736, 37 L.Ed.2d 146 (1973); Young v. Taylor, 466 F.2d 1329 (10th Cir. 1972); Burkhart v. Allson Realty Trust, 363 F.Supp. 1286 (N.D.Ill.1973); In re Caesar's Palace Securities Litigation, 360 F.Supp. 366 (S.D.N.Y.1973); Hecht v. Harris, Upham & Co., 283 F.Supp. 417 (N.D.Cal.1968), modified on other grounds, 430 F.2d 1202 (9th Cir. 1970). Although these authorities deal specifically with punitive damages, we believe they stand for the broader proposition that remedies for pendent state law claims have not been circumscribed by the Federal Securities Acts. Thus, they apply with equal force to a claim for damages for mental suffering. We must therefore consider these damage claims under applicable state law.
 
 
 23
 (1) Mental Suffering
 
 
 24
 If Ryan was too stupefied by alcohol to know what he was doing, as the evidence tended to prove, then his mental suffering when the investment went sour was de minimis. We can find no fault with the trial court's conclusion that there was insufficient evidence to support the conservator's claim of mental suffering on the part of Thomas Ryan or of his guardianship estate. That part of the decision is affirmed.
 
 
 25
 Defendants argue that the award of damages based upon mental suffering on the part of the wife and son also must be set aside as a matter of state law. Under Oregon law, when mental suffering is a direct result of another tort, it can be an element of damage if genuine emotional suffering is produced by aggravated conduct on the part of the defendant. Fredeen v. Stride, 269 Or. 369, 525 P.2d 166 (1974); Douglas v. Humble Oil & Refining Co., 251 Or. 310, 445 P.2d 590 (1968); Hovis v. City of Burns, 243 Or. 607, 415 P.2d 29 (1966); Hinish v. Meier & Frank Co., 166 Or. 482, 113 P.2d 438 (1941).
 
 
 26
 The jury found the defendant grossly negligent. Gross negligence in Oregon is characterized by conscious indifference to or reckless disregard of the rights of others. Thus, the defendant's conduct was sufficiently aggravated to support an award of damages for mental suffering as to the wife. The jury verdict for $7,700.00 for her mental suffering must be reinstated.
 
 
 27
 The son, however, cannot recover for his mental distress, if any. He suffered no actual loss. An actor who negligently causes emotional distress to another is liable only if that distress is the direct and natural result of another compensable tort or if that distress leads to physical injury. See Douglas v. Humble Oil, supra ; Prosser, Law of Torts § 54, at 328 (4th ed. 1971); Restatement (Second) of Torts § 436a. See also Pakos v. Clark, 253 Or. 113, 453 P.2d 682 (1969).
 
 
 28
 There was no evidence that Tomas' emotional suffering led to any physical injury. As he suffered no actual loss, his alleged emotional distress is not, therefore, the direct result of another compensable tort. It was error to submit this item of damages to the jury.
 
 
 29
 (2) Punitive Damages
 
 
 30
 The submission of punitive damages to the jury was permissible under state law. While not every act of gross negligence in Oregon will open the defendant's purse to punitive damages, the defendants' conduct in this case was sufficiently aggravated to permit the award.
 
 
 31
 The rationale for punitive damages is one of deterrence. Lewis v. Devils Lake Rock Crushing Co., 274 Or. 293, 545 P.2d 1374 (1976). Punitive damages are recoverable when the violation of societal interests is sufficiently great and the conduct involved is of a kind that punitive damages would tend to prevent. McGill v. Huling Buick, 259 Or. 413, 487 P.2d 656 (1971); see also Stroud v. Denny's Restaurant, 271 Or. 430, 532 P.2d 790 (1975); Starkweather v. Shaffer, 262 Or. 198, 497 P.2d 358 (1972); Noe v. Kaiser Foundation Hospitals, 248 Or. 420, 435 P.2d 306 (1967). In the case at bar, the broker was found to have taken unconscionable advantage of a mental cripple for gain. Punitive damages are not unreasonable to deter such conduct.
 
 
 32
 The award of punitive damages to Ryan in the amount of $21,401.74 is affirmed and the award of punitive damages to his wife in the amount of $11,679.39 is reinstated. Because the son suffered no actual loss, he cannot recover punitive damages. Lewis v. Devils Lake Rock Crushing Co., supra; Belleville v. Davis, 262 Or. 387, 498 P.2d 744 (1972). The judgment n. o. v. against the son on his claim for punitive damages is affirmed.
 
 C. Comparative Negligence
 
 33
 The jury found that each of the plaintiffs was negligent in some degree with regard to the Boise Cascade stock transaction. Indeed, without their participation, none of the unfortunate investments could have been made. The Oregon courts have not yet declared whether plaintiffs' comparative ordinary negligence can be used to offset defendant's gross negligence.
 
 
 34
 Under Oregon's earlier contributory negligence statute, a plaintiff's simple negligence was not a bar to recovery for a defendant's gross negligence. Fassett v. Santiam Loggers, Inc., 267 Or. 505, 517 P.2d 1059 (1973). In 1975 the Oregon Legislature adopted ORS 18.470, a new comparative-negligence statute. The new legislation is silent on this interesting subject.
 
 
 35
 The trial court held that the plaintiffs' comparative negligence could not be used to offset the defendant's gross negligence. The court said: "If the Oregon legislature had intended to include gross negligence in ORS 18.470, its comparative-negligence statute, it would have been easy to do so." We are inclined to agree.
 
 
 36
 Where state law is to be applied, this court will not overrule the district court's interpretation of state law unless it is clearly wrong, particularly when the highest state court has not passed on the matter. Smith v. Sturm, Ruger and Co., 524 F.2d 776, 778 (9th Cir. 1975); Robinson v. United States, 518 F.2d 1105, 1108 (9th Cir. 1975); Hurst v. Dare to be Great, Inc., 474 F.2d 483, 484 (9th Cir. 1973). The Supreme Court of Oregon has not yet spoken on the point, and we have been cited no basis for holding that the trial court was in error in refusing to offset the defendant's gross negligence by the ordinary negligence of the plaintiffs.III. CONCLUSION
 
 
 37
 We have considered the other assignments of error and find them to be without merit. The case is remanded to the trial court with instructions to enter a modified judgment for the actual cash losses and punitive damages found by the jury to be due Madeline Ryan and Tomas Ryan as guardian of the estate of Thomas Ryan, and for the damages for mental suffering awarded to Madeline Ryan.
 
 
 38
 Affirmed as modified, no party to recover costs in this court.