STURM, RUGER & CO., INC., a Connecticut Corporation, Appellant,

v.

Michael James DAY, Appellee.

Michael James DAY, Cross-Appellant,

v.

STURM, RUGER & CO., INC., a Connecticut Corporation, Cross-Appellee.

Nos. 3092, 3135.

Supreme Court of Alaska.

Aug. 22, 1980.

Robert L. Richmond, Richmond, Willoughby & Willard, Anchorage, and Kenneth P. Jacobus, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, and Edward L. Lascher, Ventura, Cal. (in association), for appellant/cross-appellee.

H. Bixler Whiting, Fairbanks, for appellee/cross-appellant.

Before RABINOWITZ, C. J., CONNOR, BOOCHEVER * and BURKE, JJ., and DIMOND, Senior Justice.

## OPINION ON REHEARING

CONNOR, Justice.

In our original opinion in this case, *Sturm, Ruger & Co., Inc. v. Day*, 594 P.2d 38, 49 (Alaska 1979), we reversed and remanded for a new trial as to both compensatory damages and punitive damages. We also held that "if punitive damages are awarded at a second trial, on essentially the same evidence as that presented in the first trial, they should not exceed $250,000." 594 P.2d at 49.

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

We have received several briefs on rehearing. After considering these further arguments of the parties, we have decided to modify our previous opinion and holdings in certain respects.

## I.

Day requests that we remand for the limited purpose of ascertaining his comparative negligence, rather than reversing the award of compensatory damages and remanding for an entire new trial. He contends that the amount of compensatory damages is not challenged, and that to retry that aspect of the case would unnecessarily entail extensive time and expense, e. g., in recalling expert medical witnesses. Sturm, Ruger is not strongly opposed to letting the original jury award of compensatory damages stand on remand, although "if pressed" it "would probably opt for . . . a full re-trial." In fact, Sturm, Ruger acknowledges that "there is much to be said for informing the jury on retrial that the quantum of compensatory damages has been resolved," submitting to the panel only the question of the percentage of fault to be attributed to the plaintiff and to the defendant.

In *State v. Kaatz*, (also known as *Kaatz II*), 572 P.2d 775 (Alaska 1977), we approved the use of partial new trials on the issue of percentage apportionment of comparative fault in the cases where the evidence on liability is separable from the evidence on damages. In such cases, we stated,

> "the court should instruct the jurors that (1) they must assign some percentage of the negligence to each party, (2) the total damages are in the sum found by the previous trier of fact (unless the same jury is also retrying the damage issue), and (3) their sole function is to apportion the negligence between the parties."

572 P.2d at 785, n.11.

In *Kaatz II*, we held that the trial court erred in failing to retry the damages question after we remanded for a new trial on

fault and damages. Failure to retry damages in that case was potentially prejudicial to the defendant because it had not offered evidence at trial on the issue of damages, apparently in the belief that under the contributory negligence doctrine plaintiff's claim should have been barred entirely. However, we also held that it was appropriate for the trial judge to apportion negligence on remand, while submitting the question of damages to the jury, since the evidence on liability was almost entirely separate from the evidence on damages. In such cases, we noted: "[I]f the trier of fact performs its function correctly, it will consider the two issues wholly separately." *Id.* at 785.

Sturm, Ruger has cited no cases which prohibit the use of a partial new trial on the issue of comparative fault while leaving the original award of damages intact. It does, however, point to cases from other jurisdictions which hold that the general issue of liability cannot be separated from the issue of the percentage of negligence attributable to each party on retrial. *Begin v. Weber*, 305 Minn. 441, 234 N.W.2d 192 (1975)[1]; *Juvland v. Mattson*, 289 Minn. 365, 184 N.W.2d 423 (1971). The question of damages, on the other hand, can be, and is, answered independently of liability. *See Ferguson v. Northern States Power Co.*, 307 Minn. 26, 239 N.W.2d 190, 196 (1976).

It has been held that a partial new trial will not be permitted "where a tangled or complex fact situation would make it unfair to one party to determine damages apart from liability, or where, 'there is reason to think that the verdict may represent a compromise among jurors with different views on whether the defendant was liable.'" [citations omitted] *Vizzini v. Ford Motor Co.*, 569 F.2d 754, 760 (3d Cir. 1977). In Alaska, whether the issues are sufficiently separable to warrant a partial new trial depends upon the facts and circumstances of each case. *See Poulin v. Zartman*, 542 P.2d 251, 276 (Alaska 1975).

---

1. In *Begin*, the court noted that there was no reason to retry the damages issue, since the jury award seemed reasonable. 234 N.W.2d at 195.

■ In the present case the damage issue was fully litigated at the first trial, neither party contests the jury's award of compensatory damages, there is no evidence that the damage award reflects a compromise verdict, and appellant has made no showing that it would be prejudiced by failure to retry the damages issue. Although there is always the chance that new evidence of fault would affect the jury's determination of damages, we believe that in this case the evidence on liability is almost entirely separate from the evidence on damages, and the potential for prejudice is slight. In order to limit the time and expenditure required by a new trial, we direct that there shall be a partial new trial on the issue of comparative fault, letting the amount of compensatory damages remain intact.

The partial new trial shall be limited to determining the comparative fault of the parties.

## II.

Day argues that the punitive damage question should not be remanded for a new trial, since the trial judge never ruled on the question of remittitur. In our original opinion, we held that the trial court erred in ruling that the remittitur motion was untimely under Rule 59(f). Thus, Day maintains that, having now ruled that the question of excessive damages was properly before the trial court, we should remand for the trial court to consider remittitur, rather than determining the question ourselves.

■ On reflection, we have decided upon a different course. We believe that a mistake was made when we held in our original opinion that the punitive damage award of $2,895,000 "appears to be so out of proportion to the amount of actual damages as to suggest that the jury's award was the result of passion or prejudice". 594 P.2d at 48.

■ After reviewing the record once more, we are now of the opinion that the punitive damage verdict was not the result of passion or prejudice. It was simply an excessive verdict when viewed according to the various factors set forth in our original opinion.[2] Id. 594 P.2d at 48, n.17.[3] Therefore, there is no reason to remand for either a new trial or a trial court ruling on remittitur.[4] If we were to remand, and if the trial court granted a remittitur, it is highly probable that the question of excessive damages would again be presented to us in an additional appeal. Judicial economy dictates that we make the decision ourselves at this time.

■ After further consideration of the evidence in the record and the factors, mentioned above, which bear upon the reduction of an excessive punitive damage award, we are of the view that in our original opinion we reduced the award unduly. In our opinion the award should be reduced to the amount of $500,000 rather than the $250,000 set by our original opinion. Moreover, judgment for $500,000 in punitive damages may be entered immediately upon remand.[5]

2. *See Jenkins v. Commodore Corporation Southern*, 584 S.W.2d 773, 778 (Tenn.1979). There the court held that a verdict for compensatory damages was excessive and subject to reduction through remittitur, even though it was not the result of passion or prejudice. Its mere excessiveness, the court held, did not warrant the conclusion that it was the result of emotion, prejudice, or improper motive on the part of the jurors. The verdict was for $250,-000, and it was reduced through remittitur to $100,000.

Although that case concerned compensatory rather than punitive damages, the underlying principle is the same.

3. We still believe that a comparison of actual damages with the punitive damages is a factor

which may enter into the determination of excessiveness. However, there may be cases in which it is of only slight value or is totally inapplicable.

4. If the verdict were tainted because of passion or prejudice, we might well be required to grant a new trial, and not permit remittitur by the trial court. *See International Brotherhood of Teamsters, Local 959 v. King*, 572 P.2d 1168, 1179 (Alaska 1977); *Hash v. Hogan*, 453 P.2d 468, 473 (Alaska 1969).

5. Alternatively, Day is entitled to a new trial in the event that he does not accept the remittitur. *See Kennon v. Gilmer*, 131 U.S. 22, 29–30, 9 S.Ct. 696, 698–699, 33 L.Ed. 110 (1889); Anno., 53 A.L.R. 779, supplemented at 95 A.L.R. 1163;

This case is to be remanded to the superior court for further proceedings consistent with this opinion.

REMANDED.

MATTHEWS, J., not participating.

BURKE, Justice, dissenting.

I am more convinced now than ever that the court made a serious mistake in holding (1) that Sturm, Ruger was entitled to an instruction on comparative negligence and (2) that the jury's award of punitive damages was excessive. On rehearing, I would modify our original holding and affirm the judgment of the superior court.

I

It is still my opinion that there was no evidence of negligence on the part of the plaintiff. As noted by Senior Justice Dimond in his original dissent, the evidence established "nothing more than that the gun slipped and Day grabbed it." *Sturm, Ruger & Co. v. Day*, 594 P.2d 38, 49 (Alaska 1979) (Dimond, Sr. J., joined by Burke, J., dissenting). There is simply nothing in the record to suggest that Day's conduct amounted to a failure to exercise ordinary care.

Even if Day was guilty of negligence, however, I would still deny Sturm, Ruger the benefit of a comparative negligence instruction. As evidenced by the fact that it awarded punitive damages to Day, the jury found, in accordance with the court's instructions, "that [Sturm, Ruger] acted with reckless indifference toward the safety of its customers, or that its acts . . . were maliciously or wantonly done." Day, on the other hand, if negligent at all, was certainly guilty of nothing more than ordinary negligence. A rule that allows such a defendant the benefit of an instruction on comparative negligence is, in my opinion, both bad law and a sad commentary on our perception of the public policy of this state.[1] Yet, that is exactly the rule that we have established by our holding in this case.

II

On the issue of punitive damages, I applaud the majority's retreat from its original position that the amount of the award suggested that the jury's verdict was the result of impermissible "passion or prejudice," and its decision to allow an award of $500,000, on remand, rather than limiting the award to $250,000. I still believe, however, that the jury's verdict was entirely justified given the purpose of punitive damages.[2] *Id.* at 50 (Burke, J., dissenting).

Perhaps the most disturbing aspect of this case to me is the message that it holds

6 A J. Moore, Federal Practice, sec. 59.05[3] at 59–61 (2d ed. 1948 and Supp. 1979).

1. Of the few courts which have addressed this question, most have held, or at least indicated in dicta, that the plaintiff's conduct can and should be compared with the defendant's aggravated misconduct, and his recovery reduced accordingly. *See, e. g., Anderson v. Eagle Motor Lines, Inc.*, 423 F.2d 81, 83 (5th Cir. 1970); *Billingsley v. Westrac Co.*, 365 F.2d 619, 623 (8th Cir. 1966); *Li v. Yellow Cab Co. of California*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226, 1241 (1975); *Bielski v. Schulze*, 16 Wis.2d 1, 114 N.W.2d 105, 113 (1962). At least two courts, however, have held that a plaintiff's ordinary negligence should not be compared to a defendant's aggravated misconduct, to reduce the former's recovery, although they differ as to the kind of aggravated misconduct that will bar comparison. In *Ryan v. Foster & Marshall, Inc.*, 556 F.2d 460 (9th Cir. 1977), the Ninth Circuit Court of Appeals, applying Oregon law, upheld the district court's determina-

tion that "the plaintiff's comparative negligence could not be used to offset the defendant's gross negligence." *Id.* at 465. A New Jersey Superior Court, in *Draney v. Bachman*, 138 N.J.Super. 503, 351 A.2d 409 (1976), held that fault should be compared when the defendant has been grossly negligent but not when his conduct can be characterized as "wilful and wanton." *Id.* at 414–15. The court stated: "It is to such conduct that punitive damages may attach, with aim of punishing the offender and precluding repetition of the act. Comparative negligence should not apply in such cases." *Id.* at 415 (citations omitted).

2. Although the majority alludes to those factors that we said should be considered in determining the amount to be awarded as punitive damages, *Sturm, Ruger & Co. v. Day*, 594 P.2d at 48 n.17, and purports to apply them, I think the majority, in reality, ignores those factors, choosing, instead, to simply substitute its own judgment for that of the jury.

for the manufacturing and marketing world: Concerned by "[t]he spectre of bankruptcy and excessive punishment," *Id.* at 48, we will allow a manufacturer, motivated by considerations of profit, who acts with callous and calculated disregard for the lives and safety of its customers, to keep all but a small part of the profits *directly attributable to its misconduct.* Rather than give a windfall, *i. e.,* non-compensatory damages, to an *innocent* purchaser seriously injured by the manufacturer's failure to correct a known, dangerous defect, we will allow the windfall, instead, to go to the guilty party. We will lend our protection and assistance to that manufacturer, by enabling it to compete more effectively against its safety conscious competitors, *i. e.,* those who have cut into their own profits, thereby making them less able to compete in the marketplace, by devoting money and effort to the research, design considerations and manufacturing techniques necessary to discover and avoid risk of harm to those purchasing and using their products. In other words, we will encourage, rather than discourage the wrongdoer, by giving the wrongdoer an economic advantage over those competitors who function in a responsible manner.

DIMOND, Senior Justice, concurring and dissenting.

I agree with the opinion on rehearing to the extent that, on the issue of comparative fault, only a partial new trial will be required, and that the amount of compensatory damages awarded at the original trial shall remain intact. However, I still adhere to my original dissent which was and still is to the effect that reasonable persons could not justifiably have different views on the question of whether Day was negligent in his handling of the revolver, but could only reach the conclusion that he was not negligent. *Sturm, Ruger, & Co. v. Day,* 594 P.2d 38, 49–50 (Alaska 1979). Therefore, in my opinion, even a partial new trial on the issue of comparative fault should not be required.

I concur with the opinion on rehearing to the extent that it reduces the award for punitive damages to $500,000.00, rather than to the sum of $250,000.00 as required by the original opinion in this case, and that a judgment for $500,000.00 in punitive damages may be entered on remand.