**LUFTHANSA GERMAN AIRLINES,**
Plaintiff,

v.

**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Defendant.**

No. C–78–2388–WWS.

United States District Court,
N. D. California.

Oct. 31, 1979.

---

4. Transcript of Hearing, Docket No. 88 at 31–32.

Richard L. Ackerman, Paul S. Ferber, T. Scott Brooke, Herzfeld & Rubin, Los Angeles, Cal., for plaintiff.

Robert A. Padwya, George M. Duff, Theodore Sachsman, Douglas R. Backeberg, San Francisco, Cal., for defendant.

## OPINION AND ORDER

SCHWARZER, District Judge.

Plaintiff Lufthansa German Airlines brought suit to recover $63,081.98 which, it alleged, was wrongfully charged back to its account by defendant Bank of America. Plaintiff and defendant have filed cross motions for summary judgment.

### I.

### FACTS

On June 15, 1978, Novo International Airfreight Corporation issued a check in favor of plaintiff in the amount of $63,-

081.98. The check was drawn on First Pennsylvania Bank and Trust Company in Philadelphia. The next day, June 16, plaintiff endorsed the check and deposited it in the Union Square branch of the Bank of America ("Bank"). The check was endorsed by the Bank on the same day and transferred to the Federal Reserve Bank ("FRB") of San Francisco.

On June 19, 1978, the FRB in Philadelphia received the check and transferred it to the First Pennsylvania Bank. Two days later, on June 21, 1978, that bank dishonored the check for insufficient funds and returned it to the FRB in Philadelphia.

On the day it received the dishonored check, the FRB in Philadelphia informed the FRB in San Francisco by telephone that the item had been returned for insufficient funds. The San Francisco FRB in turn called the Bank's returned item section, also on June 21, 1978, to inform it of the check's dishonor. In conformity with Federal Reserve Operating Circular # 2, the FRB notified the Bank of (1) the amount of the dishonored check; (2) the reason for the nonpayment; (3) the date of the Federal Reserve cash letter; (4) the name of the maker; and (5) the American Banking Association ("ABA") routing numbers of all endorsers preceding the FRB. The FRB did not inform the Bank of the branch in which the check had initially been deposited. On June 26, 1978, five days after receiving notice from Philadelphia and notifying the Bank, the FRB in San Francisco received the check. On the same day, at the 3:00 p.m. clearings, the check was returned to the Bank's returned item section. On the next day, June 27, 1978, according to the Bank, plaintiff was notified that the check had been dishonored. Plaintiff claims this notification did not occur until a day later, June 28, 1978, and the Court will assume, for the purposes of the motion, that plaintiff is correct.

## II.

### NOTICE OF DISHONOR

A collecting bank's right to charge back its depositor's account where a check has been dishonored is governed by Section 4212 of the California Commercial Code which provides in relevant part:

> If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account or obtain refund from its customer whether or not it is able to return the item *if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts.* (Emphasis added)

In this case, the Bank received timely notice of dishonor from the Philadelphia FRB on June 21 but did not notify Lufthansa until June 28. The issue is whether it sent notification "by its midnight deadline or within a longer reasonable time after it learn[ed] the facts." If it did not, it was not entitled to charge back against Lufthansa.

Section 4104(1)(h) of the Commercial Code defines "midnight deadline" as "midnight on [the] next banking day following the banking day on which [the bank] receives the relevant item or notice or from which the time for taking action commences to run, whichever is later." This section contains a potential ambiguity. If the words "whichever is later" were read to modify receipt of notice separately from receipt of the item, a bank would be under no duty to notify its customer until it had actually received the check, regardless of its having received prior notice. Such an interpretation would make notice largely irrelevant and therefore would run contrary to the scheme underlying these rules. Moreover, it would make surplusage of the provision of Section 4212 allowing a bank reasonable time after it learns facts to return the item or send notification. If the bank were always permitted to wait until it received the dishonored item, it would nev-

er need additional time to learn facts necessary to give notice to its depositor. The reasonable and practical interpretation of Section 4104(1)(h), therefore, would fix the midnight deadline as midnight of the day following the later of

(1) the day of receipt of the item or of notice, or

(2) the day from which the time for taking action begins to run.

Inasmuch as the Bank received notice of dishonor on June 21, its notification to Lufthansa on June 28 was untimely under the first branch of the midnight deadline definition. The question therefore is whether under the circumstances of this case the time for taking action began to run on a day subsequent to June 21.

■ Lufthansa concedes that the midnight deadline is extended "in unusual situations where the bank was unable to act by its midnight deadline through no fault of its own," citing The Law of Bank Checks by Henry J. Bailey (4th ed. 1969). It argues, however, that inasmuch as the notice of dishonor given the Bank was sufficient, conforming to the requirements of Section 3508, this was not an unusual situation. But the Code by its terms does not require notice of dishonor to include information sufficient to enable the collecting bank to make a timely charge back. Although there is a logical connection between notice of dishonor to the collecting bank and notice of charge back to that bank's customer, the provisions of Sections 3508 and 4212 do not dovetail. The open-ended language of the latter defers the midnight deadline until the collecting back "learns the facts." The only reasonable interpretation of the latter language would seem to be that the duty to notify the customer arises only after the bank has learned facts sufficient to enable it to do so.[1]

The difficulty in this case is that the notice of dishonor from the Philadelphia FRB did not identify the branch in which the check had been deposited. Without that information, the Bank could not determine the identity of the customer whose account had been credited. Lufthansa contends, therefore, that since the delay in giving notice was due solely to the Bank's failure to use a procedure to identify the branch of deposit, it should be attributed to the Bank's fault.

That argument, however, ignores the fact that the practice of the banking industry, approved by the Federal Reserve Board, is normally to limit banks operating branches to a single routing number. As the pamphlet "Routing Numbers Specifications and Guides," issued by the joint ABA/FRB Routing Number Task Force, explains, the purpose of routing numbers is to identify the end-point in the collection process. Since in the usual case banks process items for collection centrally and not at their separate branches, routing numbers should not be used to identify branches (p. 7). Accordingly, the major banks in the San Francisco area, as well as elsewhere, use a single routing number for all branches and offices in the particular area. *See*, American Bankers Association Key to Routing Numbers 1978 (60th ed.) p. K-40.

■ The purpose of the limitation on the number of numbers, as explained by the ABA/FRB task force, was not to serve the convenience of individual banks, but to enhance the operation of the payment system of the banking industry. The limitation was adopted as a result of a joint industry-FRB effort. Under these circumstances it would be inappropriate to hold the Bank liable for having failed to employ separate routing numbers for its branches.

■ The Court concludes therefore that the Bank's obligation to give notice did not arise until June 26 when, having received the returned check, it learned facts sufficient to enable it to give notice to Lufthan-

---

1. Lufthansa suggests without citation of authority that the Bank might have been under a duty to make inquiries upon receipt of the notice of dishonor on June 21 so as to enable it to learn the necessary facts and give notice to its depositor promptly. The Commercial Code affords no basis for the imposition of such a duty and the Court is aware of no authority on the point.

sa. Inasmuch as the check was not returned until the 3:00 p. m. clearings on that day, it was received after closing and is therefore deemed to have been received on June 27. Cal.Com.Code Sec. 4107. Lufthansa was notified not later than June 28 in compliance with the midnight deadline under Section 4212, as well as within a reasonable time as prescribed by that section.

For the reasons stated defendant's motion for summary judgment must be granted and plaintiff's motion denied.[2]

IT IS SO ORDERED.

2. Regrettably the memoranda and arguments submitted by the Bank were of little help in the decision of this matter. The Court would like to think that, especially in a matter such as this involving questions important to its operation, the Bank would have the resources, capability and desire to provide the Court with more assistance than it did here.