LUFTHANSA GERMAN AIRLINES,
Plaintiff-Appellant,

v.

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Defendant-Appellee.

No. 79–4842.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1981.

Decided Aug. 3, 1981.

Alan A. D'Ambrosio, New York City, for plaintiff-appellant.

Douglas R. Backeberg, San Francisco, Cal., for defendant-appellee.

Before HUG, POOLE and REINHARDT, Circuit Judges.

HUG, Circuit Judge:

This case concerns a bank's right to "charge back" to its customer's account the amount of a check deposited by the customer and dishonored by the drawee bank. The issue is whether the telephonic notice of the dishonor by the Federal Reserve Bank to the depositary bank's central clearing center triggered the bank's duty to notify the customer of dishonor. The decision requires an interpretation of relevant sections of the California Commercial Code.

Lufthansa German Airlines ("Lufthansa") brought this diversity action against the Bank of America ("Bank") to dispute the charge-back of a $63,081.98 check that Lufthansa had deposited to its account in the Union Square Branch of the Bank. The check was drawn by Novo International Airfreight Corporation on First Pennsylvania Bank and Trust Company with Lufthansa as payee. The check was forwarded through Federal Reserve Bank channels to First Pennsylvania Bank and Trust Company for collection where it was dishonored for insufficient funds. Pursuant to Federal Reserve Operating Circular # 2, which requires expedited notice of non-payment of large items, the Federal Reserve Bank gave telephonic notice on June 21st to the Bank's Centralized Returned Items Section of the check's dishonor. The telephone message included: (1) the amount of the dishonored check; (2) the reason for the dishonor; (3) the date of the Federal Reserve cash letter; (4) the name of the maker; and (5) the routing number. The message did not identify the branch at which the check was deposited or the customer who made the deposit. The Bank gave notice to Lufthansa of the dishonor after it received the check on June 28th. This notice was timely if the statutory time for notification is calculated from the date the check was received. The issue is whether the statutory notification period commenced, instead, from the date of the Federal Reserve Bank's telephone notification.

The district court on cross-motions for summary judgment entered judgment for the Bank, 478 F.Supp. 1195 (N.D.Cal.1979).

█ The parties have not cited to us, nor have we found, a decision from the California appellate courts on the question here involved. This court will not overrule the trial judge's determination of state law unless it is found to be clearly wrong, particularly when the highest state court has not passed on the matter. *Ryan v. Foster & Marshall, Inc.*, 556 F.2d 460, 465 (9th Cir. 1977). This is especially true where, as here, the trial judge is interpreting the law of the state where he sits. *Smith v. Sturm, Ruger & Co., Inc.*, 524 F.2d 776, 778 (9th Cir. 1975); *Hurst V. Dare To be Great, Inc.*, 474 F.2d 483 (9th Cir. 1973).

█ The district court concluded that "the duty to notify the customer arises only after the bank has learned facts sufficient to enable it to do so." 478 F.Supp. at 1198 (footnote omitted). Because the initial notice received by the Bank was insufficient to allow identification of the branch and the customer, the district court found that no duty to advise the customer of the dishonor existed at that time.

We adopt herein the statement of facts and the well-reasoned opinion of the district court and affirm the summary judgment.[1]

AFFIRMED.

1. On appeal, Lufthansa argues that under California law the branch and the Bank's central processing center cannot be viewed as separate entities, so that notice to the Bank must constitute notice to the branch. This argument rests upon an incorrect reading of *Farmers & Merchants Bank v. Bank of America*, 20 Cal.App.3d 939, 98 Cal.Rptr. 381 (1971). The court in that case distinguished the types of banking functions that the processing center performed for the branch. It held that where the center absorbed bookkeeping functions previously performed by the branch, the two entities could not claim "separate bank" status under California Commercial Code § 4106. 20 Cal.App.3d at 943–44, 98 Cal.Rptr. at 384. In contrast, if the service provided at the center merely consisted of sorting items for distribution to branches, the center and the bank were to be viewed as separate entities. *Id.* at n.3, 98 Cal.Rptr. 381. In the present case, the Bank's Centralized Returned Items Section was performing a sorting and routing service for its branches. The district court's holding that the initial notice to the Section did not constitute notice to the branch is therefore consistent with the *Farmers & Merchants Bank* rule.

Moreover, we note that the essential information of the identity of the customer who deposited the check was not furnished and was not required to be furnished by the Federal Reserve Bank in accordance with Federal Reserve Operating Circular # 2.