Tyrone **DAVENPORT**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 1681.

Supreme Court of Alaska.

March 8, 1974.

Herbert D. Soll, Public Defender, Lawrence J. Kulik, Asst. Public Defender, Anchorage, for appellant.

John E. Havelock, Atty. Gen., Daniel W. Hickey, Asst. Atty. Gen., Juneau, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

CONNOR, Justice.

Tyrone Davenport appeals from a judgment, after a jury verdict, of guilty of receiving and concealing stolen property in violation of AS 11.20.350.

Two questions are presented on this appeal: (1) whether the trial court erred in allowing the prosecution to introduce, for the purpose of impeaching appellant's testimony, evidence relating to a different crime for which Davenport had already been convicted, and (2) whether the trial court adequately instructed the jury as to the reasonable doubt standard.

About August 2, 1969, the home of one Jerry Chadwick was burglarized. Among the items taken was a Ford 500 Club pin.[1] On July 1, 1971, Davenport and two comrades pawned several articles of jewelry including the Ford 500 Club pin at The Nugget Loans, a pawnshop in Anchorage. The police card[2] issued on the jewelry was signed by appellant. At the time of his arrest Davenport claimed that his father had given him the pin. Davenport's father denied ever having done so.

As part of the state's case the prosecutor sought to introduce into evidence testimony which tended to establish (1) that a goldnugget cuff link, pawned with the Ford pin and signed for by appellant, had been stolen from the home of one Joseph Co-

---

1. Chadwick described the pin as a Ford [Motor Company] crest with five diamond chips on it.

2. AS 08.76.010 requires pawnbrokers to maintain, for each transaction, a record including the name and signature of the customer conducting the transaction.

lumbus and (2) that appellant had been convicted of that burglary. The court sustained a defense objection on the grounds that such testimony would be of questionable relevancy and its prejudicial effect would outweigh its probative value.

Later appellant testified in his own behalf. His defense was that he had found the Ford pin on the floor of the Nevada Club while playing pool. On direct examination he testified to having been convicted of burglary in Alaska in 1969. On cross-examination, the prosecutor questioned him extensively about the gold-nugget cuff link which had been pawned along with the Ford pin. Appellant testified that the first time he saw the cuff link was at the pawnshop, on July 1, 1971, implying that one of his companions had produced it.

Shortly thereafter, over defense counsel's objection, the court permitted the state to admit both the cuff link and testimony linking it with appellant's prior burglary conviction, for impeachment purposes. Mrs. Evelyn Columbus testified that her home in Anchorage had been burglarized about July 5, 1969, that included in the property taken was the cuff link pawned on July 1, 1971, and that appellant had been convicted of that burglary.

On surrebuttal, appellant admitted to having burglarized the Columbus residence with another person, but claimed that through his lawyer he had returned all the property that he had taken. He asserted that the companion, however, had not returned what was in his possession. The state was then permitted, over objection, to impeach appellant's surrebuttal testimony. It recalled Mrs. Columbus to establish that a gold tie tack which Davenport had pawned in March, 1971, had also been taken in the Columbus burglary.

Appellant contends that the court erred in allowing such impeachment because all of the testimony elicited from Mrs. Colum-

bus concerned matters collateral to the issue raised in the instant prosecution, namely, whether appellant received and concealed the Ford pin knowing it to have been stolen.

I

Appellant cites us to Wharton's statement of the well-known rule limiting impeachment of testimony given on cross-examination "to those matters which are material and relevant":

"The answers of a witness given upon cross-examination on any irrelevant or collateral matter are conclusive and binding on the cross-examiner, and the witness may not be contradicted or impeached upon an immaterial or collateral matter or issue to which he testified on cross-examination. In connection with the propriety of impeaching testimony given on cross-examination, the test of whether the fact inquired into is collateral is generally the query whether the cross-examining party would be entitled to prove it as part of his case tending to establish his plea or for any purpose independently of the contradiction, by introducing evidence on the subject in chief." 3 Wharton's Criminal Evidence § 914, 332–34 (12th Ed. 1955) (footnotes omitted).

The trial court having sustained appellant's irrelevancy and prejudicial-effect objection to the state's attempt to introduce the Columbus cuff link in its case-in-chief, appellant contends that this evidence necessarily goes to a "collateral matter," about which it was improper to impeach him.

We are thus confronted with the question of whether Mrs. Columbus' testimony and the cuff link fall within the protean word of art "collateral."[3] If so, they should not have been admitted over defendant's objection. It is generally stated that facts which would be independently

3. McCormick, Evidence § 47, at 98 (2d ed. 1972). *See also* Hartsfield v. Carolina Casualty Insurance Co., 451 P.2d 576, 579 (Alaska 1969).

provable are not "collateral."[4] Obviously, facts which are relevant to the issues of the case come within this category. In addition, facts independently provable to impeach or disqualify the witness, whether or not introduced to contradict him, are admissible. For example, testimony may be introduced to show bias, interest, conviction of a crime or lack of capacity or opportunity for knowledge of the facts related.[5]

Finally, a third kind of fact must be considered. Suppose a witness has told a story of a transaction crucial to the controversy. To prove him wrong in some trivial detail of time, place or circumstance is "collateral." But to prove untrue some fact recited by the witness that if he were really there and saw what he claims to have seen, he could not have been mistaken about, is a convincing kind of impeachment that the courts must make place for, although the contradiction evidence is otherwise inadmissible because it is collateral under the tests mentioned above. To disprove such a fact is to pull out the linchpin of the story. So we may recognize this third type of allowable contradiction, namely, the contradiction of any part of the witness's account of the background and circumstances of a material transaction, which as a matter of human experience he would not have been mistaken about if his story were true.[6]

■ Here the testimony as to the Columbus cuff link which was pawned at the same time as the stolen Ford pin was central to the facts at issue. The case arose out of the pawning of the various items. It is immaterial that it was on cross-examination, rather than direct, that Davenport testified to never having seen the gold cuff link prior to its being pawned on July 1, 1971. The testimony went to the essence of the critical transaction. Here, in short,

is not an instance, of tangential mistake on the part of the witness. Rather, the cuff link, tie clip and Mrs. Columbus' accompanying testimony all tended to show deliberate fabrication by Davenport pertaining to the focal issue of the trial. We hold that the contradicting testimony and evidence was not collateral, and that the trial court did not err in overruling the objections to its admission into evidence.

## II

Appellant claims that the instructions were deficient in two particulars: (1) their failure to instruct that the prosecution must prove each and every element of its case beyond a reasonable doubt, and (2) the use of the phrase "moral certainty".

We find no merit whatever in the first claim. The last paragraph of Instruction 16 reads:

*"If each and all of these essential elements have been proved to your satisfaction beyond a reasonable doubt,* then you should find the Defendant guilty of the crime charged in the Indictment, but if there has been a failure to prove any of the essential elements as herein set forth to your satisfaction beyond a reasonable doubt, then you should acquit the Defendant of the charge contained in the Indictment." (emphasis added)

This instruction was clearly satisfactory.

■ Turning to the second alleged deficiency, in Instruction 14 the court used the phrase "moral certainty" in the context of defining the reasonable doubt standard:

"A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal. This presumption placed upon the State the burden of proving him guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: It is not a mere pos-

---

4. McCormick, Evidence § 47, at 98 (2d ed. 1972). *See also* 3A Wigmore, Evidence § 1003 at 961; § 1020 at 1010 (Chadbourn rev. 1970).

5. McCormick, Evidence § 47, at 99 (2d ed. 1972).

6. *Id.*

sible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge."

Under Alaska Criminal Rule 30(b)(3) instructing the jury as to reasonable doubt is mandatory on the court, and a grossly deficient instruction may be so prejudicial as to require reversal even in the absence of timely objection.[7] In our opinion, however, there is no basis for concluding that Instruction No. 14 was fatally defective.

According to 2 Wright, Federal Practice & Procedure § 500, at 342–43 (1969):

"Some courts define reasonable doubt as requiring persuasion 'to a reasonable or moral certainty.' *This is not erroneous,* although it has been suggested it is not the best way to put the matter. The proposition cannot be reversed, however.

It is error to define reasonable doubt as 'a doubt to a moral certainty.'[8] Instructions in terms of 'abiding conviction' have also been criticized. Some courts speak of a reasonable doubt as one for which a juror can give a reason. *The accepted view seems to be that such a form of words is not approved and perhaps unwise but not erroneous."* (emphasis added, footnotes omitted)

On the other hand, Professor Wright states that the most acceptable form of instruction defines reasonable doubt as "a doubt that would cause prudent men to hesitate before acting in matters of importance to themselves." 2 Wright, op. cit. at 342.[9] We agree that this formulation is preferable to the somewhat vague "moral certainty." While we do not wish to be read as setting down an invariable standard form of instruction, we will in the future require greater clarity in instructions defining reasonable doubt.[10] Finding no error in the instructions, we affirm the judgment below.

Affirmed.

---

7. Ordinarily, of course, Alaska Criminal Rule 30(a) forecloses an appellant from raising deficiencies in an instruction for the first time on appeal:

   "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

   The language of Alaska Criminal Rule 30(b), however, is clearly mandatory:

   "The court . . . *whether or not requested to do so, shall* give the following basic instructions on all proper occasions:

   . . . . .

   (3) That guilt shall be established beyond reasonable doubt." (emphasis added)

8. In United States v. Byrd, 352 F.2d 570 (2d Cir. 1965) the trial court had given as one of the alternative definitions for reasonable doubt the following:

   "It is doubt to a moral certainty."

   The Second Circuit found such instruction objectionable because—

   " 'Doubt' and 'certainty' are antithetical and, in our opinion, the use of them in this manner and for this purpose would tend to create more confusion than light in the minds of the jury." 352 F.2d at 575.

   In the case at bar, the court avoided the *Byrd* pitfall. Instruction No. 14 speaks of "an abiding *conviction,* to a moral certainty, of the truth of the charge."

9. Avery v. State, 514 P.2d 637, 642–643 (Alaska 1973).

10. A profitable guide to drafting a reasonable doubt instruction may be found in 1 Devitt and Blackmar, Federal Jury Practice and Instructions § 11.01, 205–08 (1970).