Gregory JONES, Appellant,

v.

STATE of Alaska, Appellee.

No. 2977.

Supreme Court of Alaska.

April 7, 1978.

James H. Cannon, Johnson, Christensen & Glass, Fairbanks, for appellant.

James E. Douglas, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

OPINION

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

BURKE, Justice.

After a trial by jury, appellant Gregory Jones was convicted on each of two counts contained in an indictment charging him with sale of heroin. The superior court imposed a sentence of seven years, with three years suspended. Jones was made ineligible for parole until after serving one-half of the four year period of actual incarceration. This appeal followed.

On appeal, Jones contends that the trial court erred in excluding the testimony of two defense witnesses, Walter Padgett and Thomas Phillips. He also claims that his sentence is excessive.

I

Jones was indicted after he allegedly sold one "slip" of heroin to Phillip Geiger and another to James Blair, for $100.00 per "slip," on November 17, 1975. Geiger, who admitted being a former heroin addict and drug dealer under indictment on multiple charges relating to the sale of narcotics, was a police informant, operating under police surveillance and pursuant to an agreement with the Fairbanks District Attorney's office. According to the agreement, Geiger was to assist in the detection, arrest and prosecution of other persons dealing in narcotic drugs, in return for which the district attorney agreed to allow him to plead guilty to one of his pending charges, and dismiss prosecution on the remaining charges. Blair was also a police informant and a friend of Geiger's. Like Geiger, he admitted that he had been a heroin addict and dealer.

Geiger and Blair both testified during the state's case-in-chief. Each stated that on November 17, 1975, he purchased heroin from Jones. This testimony was corroborated by police officers who testified that Geiger and Blair were kept under visual and electronic surveillance during the "buys."

Geiger testified that he was no longer addicted to heroin and that his last voluntary use of narcotics, before he purchased heroin from Jones on November 17, 1975, was in August, 1975. He further testified that he had used narcotics twice while working for the police. The first such use, according to his testimony, was on the evening of November 17, 1975, when Jones asked him if he wanted to test the heroin before purchasing it. Geiger stated that on that occasion he "tested it by snorting a little bit through [his] nostrils." His next use of narcotics was on December 1 or 2, 1975, when he injected heroin in the pres-

ence of one Danny Keyes, another drug dealer, in order to protect his undercover status. On cross-examination Geiger stated that he had not used narcotics in the presence of Walter Padgett and that he had not used any between February, 1976, and the time of Jones' trial. He also denied "skimming" heroin from any of the purchases made in the course of his undercover activities for the police.

Blair testified that he was no longer an addict and that his last use of narcotics was in August or September, 1975. He denied telling Walter Padgett that he had been "skimming" drugs during the time he worked for the police. He also denied using heroin or asking Thomas Phillips to obtain heroin for him in February, 1976.

After presentation of the state's case-in-chief, Jones attempted to call Walter Padgett and Thomas Phillips, in an effort to impeach the testimony of Geiger and Blair. The trial court sustained an objection by the state and refused to allow the jury to hear their testimony, ruling that such evidence went only to collateral matters and was therefore not admissible for purposes of impeachment. Jones then made an offer of proof, outside the jury's presence, consisting of the testimony of Padgett and Phillips.[1]

Phillips testified that in mid-February, 1976, he observed Geiger and Blair, on three occasions, injecting heroin into their arms. He further testified that before trial Geiger suggested that he not disclose all that he had observed, stating:

> [H]e told me that if I was to testify in court that I had turned my head when he had injected the heroin into his arm, that there would be no hassle between us in court.

Padgett testified that on three or four occasions in late 1975, and on two or three other occasions in February, 1976, he saw Geiger and Blair "shooting up" with what they said was heroin. He further testified that they had told him that they obtained heroin for their own use by "skimming" from purchases made for the police. In addition, he stated that in February, 1976, they suggested that he go to Anchorage, because "they didn't really want [him] to be available for subpoena," explaining, however, "They never really said this straight out—you know, it's just what they implied." Finally, he stated that on one occasion Geiger suggested that he should not testify at Jones' trial, describing that incident as follows:

> One time [Geiger] came out to the cabin and wanted me to come and sign some kind of statement saying that they'd never gotten down or had any heroin or something.

When asked if either man had ever threatened him, he stated, "No."

In determining that the testimony of Padgett and Phillips was inadmissible, the superior court relied upon the rule recognized by this court in *Freeman v. State,* 486 P.2d 967 (Alaska 1971):

> It is well settled that extrinsic evidence may be admitted to show specific error in the testimony of an opposing witness; however, extrinsic evidence is not permitted to contradict a witness if it relates to a collateral matter.

486 P.2d at 979–80. *Accord, Fields v. State,* 487 P.2d 831, 846 (Alaska 1971). The trial judge also demonstrated a thorough understanding of the further explanation of that rule found in *Davenport v. State,* 519 P.2d 452 (Alaska 1974):

> [F]acts which are relevant to the issues of the case [are not collateral]. In addition, facts independently provable to impeach or disqualify the witness, whether or not introduced to contradict him, are admissi-

---

1. Rule 43(c), Alaska R.Civ.P., provides in part:
 *Record of Excluded Evidence.* In an action tried by a jury, if an objection to a question propounded to a witness is sustained by the court, the examining attorney may make a specific offer of what he expects to prove by the answer of the witness. The court may require the offer to be made out of the hearing of the jury. The court may add such other or further statement as clearly shows the character of the evidence, the form in which it was offered, the objection made and the ruling thereon.
 *See also* Rule 26(a), Alaska R.Crim.P.

ble. For example, testimony may be introduced to show bias, interest, conviction of a crime or lack of capacity or opportunity for knowledge of the facts related. 519 P.2d at 455 (footnotes omitted).[2]

In considering the state's objection, prior to the offer of proof, the court asked Jones' attorney what testimony he expected to elicit from Padgett and Phillips. Counsel indicated that they would testify to having observed Geiger and Blair with what they said were narcotics on occasions other than those admitted during their own testimony, thus contradicting that testimony in certain particulars. Counsel further stated that he wanted to determine whether it had ever been suggested, presumably by Geiger or Blair, that Padgett not testify.

After several suggestions that such testimony went only to collateral matters, counsel stated:

> I think the whole key here is—the whole key is whether or not Blair and Geiger have testified truthfully. And I'm not—this evidence of whether or not they shot up isn't being introduced to prove that they actually shot up. Only that someone else has seen events which are inconsistent with their prior testimony.

The court replied, "Then that would be collateral to this case." Thereafter, by way of further argument, counsel stated:

> Again, I'd say that I think that when it's kept as to what the individual saw or what was said to him, that it is relevant here. And I would also suggest that an alternate—as an alternative theory that just like asking about truth and veracity

of the witness, when it comes to some bad moral habit or some conduct of immorality on the State's—or the informer's part, then that goes to his general truth and veracity, and if it can be shown that he was addicted and that he was giving false testimony here on the stand and [he] has other bad moral habits, then in general, he loses his whole respect for the truth.

Counsel then proceeded with his offer of proof.

After the offer of proof, the court stated:

> I'm more convinced now than I was before that this is collateral matter . . . [N]one of these people have testified as to any bias or prejudice or anything else that's been directed toward this defendant, which would be admissible, whether or not it's collateral matter. This goes directly to the veracity of the witness, and I'm convinced that under the citations I've previously given you, . . . I'm not so sure about *Davenport [v. State]*, but under *Freeman [v. State]* this is collateral matter, it should not be allowed.[3]

 Jones argues on appeal that the testimony of Walter Padgett and Thomas Phillips was admissible to establish the following: (1) the capacity of Geiger and Blair to observe, (2) bias on their part toward Jones, and (3) the effectiveness of the control procedures used by the police, a material part of the state's case-in-chief. The difficulty with such argument is that the admissibility of the evidence on these grounds is argued for the first time on appeal.

**2.** In *Davenport* we quoted the following excerpt from 3 Wharton's Criminal Evidence, § 914, 332–34 (12th Ed. 1955) (footnotes omitted):

> The answers of a witness given upon cross-examination on any irrelevant or collateral matter are conclusive and binding on the cross-examiner, and the witness may not be contradicted or impeached upon an immaterial or collateral matter or issue to which he testified on cross-examination. In connection with the propriety of impeaching testimony given on cross-examination, the test of whether the fact inquired into is collateral is generally the query whether the cross-exam-

ining party would be entitled to prove it as part of his case tending to establish his plea or for any purpose independently of the contradiction, by introducing evidence on the subject in chief.

519 P.2d at 454.

**3.** Prior to the offer of proof the court stated:

> [Y]ou still have the collateral attack issue on this thing with reference to these people. They've admitted their involvement in the drug scene; they've admitted that they [were] given a deal for it; they've admitted that they had ulterior motives for doing it . . . . . .

In the trial court the evidence was clearly offered only to show that during their own testimony Geiger and Blair had testified falsely about matters not directly related to the sales Jones had made to them, and that they were otherwise persons of bad moral habits. The trial court correctly ruled that the evidence was inadmissible on such grounds. *Davenport v. State, supra; Fields v. State, supra; Freeman v. State, supra.* Having specified a particular purpose for the offer, Jones is not in a position to now claim error because the evidence might have been admissible on other grounds.

An offer of proof serves to inform the trial court of the content and purport of the evidence sought to be admitted, and to preserve the record for appellate review when the exclusionary ruling is challenged. *Cherberg v. Peoples National Bank of Washington,* 15 Wash.App. 336, 549 P.2d 46, 50 (1976). It is the duty of one offering evidence to make clear to the trial court the reason why he deems the evidence contained in the offer of proof admissible, so that the court may make an informed ruling. *Tomlinson v. Bean,* 26 Wash.2d 354, 173 P.2d 972, 976 (1946). As stated in *Arizona Water Company v. City of Yuma,* 7 Ariz.App. 53, 436 P.2d 147 (1968):

> It is a familiar principle of law that when a party offers evidence for a purpose for which it is inadmissible and the judge excludes the evidence, the party cannot complain of the ruling although for another purpose it could have been properly admitted.

436 P.2d at 151.

Although the three cases that we have cited in the preceding paragraph all involved civil matters, the principles stated have also been applied in criminal proceedings. *See State v. Arnold,* 225 N.W.2d 120, 122 (Iowa 1975); *State v. Wilson,* 16 Wash. App. 434, 557 P.2d 18, 21 (1977); *People v.*

*Walker,* 22 Ill.App.3d 711, 318 N.E.2d 111, 115 (1974). We therefore hold that the superior court did not err in excluding the testimony of Padgett and Phillips. While we can perceive of cases where it might be error to exclude evidence, despite a faulty offer on the part of counsel, and that in such cases reversal might be required in the interest of justice, this is not such a case.[4]

II

With regard to appellant's second contention that his sentence is excessive, our review of the record fails to convince us that the trial court was clearly mistaken, although we consider the sentence quite severe in view of Jones' age and his past record of convictions. Such being the case, we are required to affirm the judgment of the superior court. *McClain v. State,* 519 P.2d 811 (Alaska 1974).

AFFIRMED.

---

4. Rule 47(b), Alaska R.Crim.P., provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In his reply brief appellant argues that the exclusion of the proffered testimony was plain error in view of the importance this court attaches to a

defendant's right to cross-examine informers and police agents as to bias and capacity, citing our past decisions in *Evans v. State,* 550 P.2d 830 (Alaska 1976); *Hutchings v. State,* 518 P.2d 767 (Alaska 1974); and *Fields v. State,* 487 P.2d 831 (Alaska 1971). Such argument is without merit.