**Robert Lee SHANE, Appellant,**

v.

**John W. RHINES, Appellee.**

**No. 5653.**

Supreme Court of Alaska.

Nov. 10, 1983.

---

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and SINGLETON, Court of Appeals Judge *.

## OPINION

PER CURIAM.

This appeal arises out of an auto accident which occurred on the Kenai Spur Road in October 1978. At trial, Rhines, the defendant below, admitted that he had been drinking prior to the accident and that he was responsible for the collision. The jury awarded Shane, the plaintiff, $12,200 in compensatory damages, and judgment for that amount was entered in February 1980. The jury determined that Shane was not entitled to punitive damages. In this appeal Shane challenges: (1) the trial court's exclusion of evidence of Rhines' past conviction for driving under the influence of alcohol; (2) the exclusion of Rhines' insurance coverage as evidence of his financial condition; and (3) the trial court's refusal to take judicial notice of or instruct the jury on AS 09.45.730 and 15 U.S.C. § 15 (1976) (amended 1980 and 1982). We affirm.

Rhines testified on direct examination that he "usually [didn't] drive and drink."[1] Counsel for Shane sought, in response, to introduce evidence that Rhines had been convicted in the past for driving while under the influence of intoxicating liquor. The evidence was excluded by the trial court. On appeal, Shane argues that this evidence was admissible "to impeach the defendant *on that statement*" (emphasis added). Rhines contends, on the other hand, that the introduction of such evidence is barred by Evidence Rules 609(a) and (b) and was therefore rightly excluded. We conclude that whether the admission of the evidence was sought for the purpose of impeaching the defendant's veracity gener-

Kenneth J. Cusack, Rogers & Cusack, Soldotna, for appellant.

Kenneth P. Jacobus and Joseph M. Huddleston, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee.

* Singleton, Court of Appeals Judge, sitting by assignment made pursuant to Article IV, section 16, of the Constitution of Alaska.

1. Rhines' remark came in the course of the following exchange:

Q: Do you think if you hadn't been drinking and driving, you maybe would have been able to avoid that accident?

A: I'm pretty sure it was a contributing factor. *I usually don't drive and drink.* I made a mistake, I think.
Q: Okay.
A: It was my responsibility.
(Emphasis added.)

ally, or of contradicting the particular statement of the defendant, the trial court properly excluded the evidence.

■ Evidence Rule 609(a) provides that the credibility of a witness may be attacked by evidence of past convictions "only if the crime involved dishonesty or false statement." As the commentary to the rule notes:

> Limiting admissibility to convictions involving crimes such as perjury, fraud, forgery, false statement, and other crimes in the nature of *crimen falsi* sharpens the inquiry and insures that prior convictions are not used as evidence of the general character of the witness . . . but are used properly, i.e., to impeach credibility.

Alaska R.Evid. 609 commentary at 171. The crime of operating a motor vehicle while under the influence, although an offense of grave consequence, does not involve "the kind of dishonesty and unreliability which bear upon the veracity of persons perpetrating [that crime]." *Lowell v. State,* 574 P.2d 1281, 1284 (Alaska 1978); see *Gordon v. United States,* 383 F.2d 936, 940 (D.C.Cir.1967); *Tucker v. Lower,* 200 Kan. 1, 434 P.2d 320, 324 (Kan.1967).

Also, the conviction sought to be admitted in this case was more than five years old. Evidence Rule 609(b) makes evidence of a conviction inadmissible for the purpose of attacking the credibility of a witness "if a period of more than five years has elapsed since the date of the conviction." Rule 609(b) therefore barred admission of Rhines' past conviction for the purpose of impeaching his credibility.

■ Evidence inadmissible under Rule 609 may be introduced, however, to contradict a witness's specific testimony as to a material issue, even though this may indirectly impeach the witness's credibility. *United States v. Alvarez-Lopez,* 559 F.2d 1155, 1158 (9th Cir.1977) (where witness de-

nied on direct examination ever being arrested for a narcotics violation, evidence of past conviction for smuggling heroin admissible, despite inadmissibility under analogous Federal Rule of Evidence 609 as well as Federal Rule of Evidence 404(b)); 98 C.J.S. *Witnesses* § 639 (1951). Here, counsel for Shane sought to introduce evidence of Rhines' past conviction in order to contradict Rhines' statement, "I usually don't drive and drink."

■ The admission or exclusion of contradictory evidence rests in the discretion of the trial court. *United States v. Batts,* 573 F.2d 599, 603 (9th Cir.1978); 98 C.J.S. *Witnesses* § 639 (1951). Relevant evidence is always subject to exclusion if, in the discretion of the trial court, its probative value is outweighed by the danger of prejudice or confusion, or by considerations of undue delay. *Johnson v. State,* 636 P.2d 47, 67 (Alaska 1981); Alaska R.Evid. 403. The issue, therefore, is whether the trial court abused its discretion in excluding the proffered evidence.

■ The general rule is that while evidence of prior convictions may be admitted to contradict the particular statements of an opposing witness, such evidence is not admissible to contradict a witness as to collateral matters. *Jones v. State,* 576 P.2d 997, 999–1000 (Alaska 1978); *Davenport v. State,* 519 P.2d 452, 455 (Alaska 1974); *Freeman v. State,* 486 P.2d 967, 979–80 (Alaska 1971); 98 C.J.S. *Witnesses* §§ 629, 633, 639 (1957).[2]

We stated in *Davenport* that "facts which are relevant to the issues of the case [are not collateral]." 519 P.2d at 455. Here, the defendant had already conceded that he had been drinking during the night prior to and on the morning of the accident, and that the collision was his responsibility. Thus, the material issue of whether or not he was intoxicated at the time of the accident was resolved. Rhines' statement as to his past

---

2. Many courts hold that collateral matters brought out on direct examination are subject to contradiction. *See* 98 C.J.S. *Witnesses* § 633, at 653 n. 6 (1957); C. McCormick, Law of Evidence § 47, at 98 (2d ed. 1972). We think the better rule is that evidence which is offered to contradict a collateral matter is inadmissible, whether or not the matter was brought out on direct. *See* McCormick, *supra,* at 98 n. 48.

conduct could only have pertained to the issue of his state of sobriety. Since the latter is established by Rhines' concession, any questions as to his past conduct raised by the statement "I usually don't drive and drink" become irrelevant.[3]

We also acknowledged in *Davenport* that "facts independently provable to impeach or disqualify the witness, whether or not to contradict him," are admissible as non-collateral issues. 519 P.2d at 455. Evidence of the past conviction was not independently admissible to impeach the defendant's credibility, as we observed above in our discussion of Rule 609.

■ Because the testimony sought to be contradicted was irrelevant to any material facts at issue and the contradicting evidence was inadmissible on independent grounds, we rule that Rhines' statement pertained to a collateral matter and should not have been subject to attack by contradicting evidence.[4]

Taking into account the potential for prejudice, it is clear that the trial court did not abuse its discretion in excluding the past conviction. The court's ruling is affirmed.

■ Shane also contends that the trial court erroneously excluded evidence of Rhines' insurance policy after permitting counsel for defendant to introduce evidence on Rhines' financial condition. The purpose of introducing the insurance policy was to establish Rhines' ability to pay punitive damages. For the reasons set forth below, we affirm the trial court's ruling.

At trial, Rhines introduced evidence that his take-home pay was about $1600 per month and that he owned a trailer, several unimproved lots, and a triplex with a total value of about $35,000. This evidence was offered to show Rhines' inability to absorb a punitive damages award. Shane did not object contemporaneously to the introduction of the evidence, but argues now that evidence of Rhines' insurance should have been admitted in order to give the jury the complete view of Rhines' financial situation. We disagree.

The special verdict form submitted to the jury required the jury to answer two separate questions regarding punitive damages: whether Shane was entitled to punitive damages and the amount of those damages.[5] The jury responded "no" to the threshold question of whether Shane was entitled to punitive damages. Given the verdict that Rhines' conduct was not so outrageous as to merit punishment, it fol-

3. Arguably, Rhines' history of driving while intoxicated on other occasions was admissible on the issue of his culpability, an essential consideration for the jury in determining Shane's right to recover punitive damages. *See Sturm Ruger & Co. v. Day*, 594 P.2d 38, 46 (Alaska 1979), *modified on rehearing on other grounds*, 615 P.2d 621 (Alaska 1981), *modified on further rehearing on other grounds*, 627 P.2d 204 (Alaska 1981), *cert. denied*, 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981), quoting *Bridges v. Alaska Housing Authority*, 375 P.2d 696, 702 (Alaska 1962) ("[I]n order to recover punitive or exemplary damages, the plaintiff must prove that the wrongdoer's conduct was 'outrageous, such as acts done with malice or bad motives or a reckless indifference to the interests of another.'") Shane, however, does not make this argument, and we decline to consider it *sua sponte*.

4. Even were the testimony not collateral to the material issue it was properly excluded for an alternate reason. Evidence is admissible to contradict a witness's specific testimony but the evidence against Rhines does not necessarily contradict his testimony. Rhines' statement was, "I usually don't drive and drink." Evidence of a prior conviction does not prove that Rhines usually does drive and drink. The contradiction is less certain than in *United States v. Alvarez-Lopez*, 559 F.2d at 1158, where evidence of a past conviction contradicted the witness's denial of any previous arrest. Unless the contradiction is clear and obvious, the evidence should be excluded as too prejudicial.

5. The Special Verdict form read in part:

Question No. 7: If you find that defendant John W. Rhines is liable for any compensatory damages, do you find that the plaintiff is entitled to recover punitive damages from defendant Rhines under the instructions which you have been given?

Answer "yes" or "no."

Answer: *No.*

Question No. 8: What is the total amount of punitive damages, if any, you find against defendant John W. Rhines?

Answer: $None.

lows that exclusion of evidence of liability insurance was, if error, merely harmless error.

It is argued that lack of evidence of liability insurance may influence jurors in their decision whether to award punitive damages, as well as how much to award. We agree that evidence of liability insurance may well affect a jury's decision whether to find a party liable, either for compensatory or punitive damages. However, the danger that evidence of insurance will persuade a jury to alter its view on the threshold question of entitlement is precisely why Evidence Rule 411 requires exclusion of that evidence.[6]

Punitive damages are designed to punish the wrongdoer and to deter him and others from similar wrongdoing in the future. *Sturm, Ruger & Co. v. Day,* 594 P.2d 38, 47 (Alaska 1979), *modified on rehearing on other grounds,* 615 P.2d 621 (Alaska 1981), *modified on further rehearing on other grounds,* 627 P.2d 204 (Alaska 1981), *cert. denied,* 454 U.S. 894, 102 S.Ct. 391, 70

L.Ed.2d 209 (1981). Although evidence of insurance arguably is relevant to the appropriate measure of punitive damages, it is not relevant to the threshold question of whether a party's conduct is so reprehensible that punishment is necessary or whether punitive damages will deter others from engaging in similar conduct. When examining a defendant's conduct to determine whether punitive damages are appropriate, it should make no difference that the party is wealthy or impoverished, or insured rather than uninsured. Either the conduct is reprehensible enough to warrant punitive damages, or it is not, and the existence or absence of liability insurance has no bearing on that issue.

The trial court also refused Shane's request that it take judicial notice of AS 09.45.730[7] and 15 U.S.C. § 15 (1976) (amended 1980 and 1982)[8] and give an instruction on them, and refused to allow counsel to argue treble damages as an appropriate award for punitive damages.

---

6. Rule 411 provides, in part, that "[e]vidence that a person was or was not insured against liability is not admissible on the issue whether he acted negligently *or otherwise wrongfully*" (emphasis supplied). As the commentary to this rule explains:

   More importantly, perhaps, the rule is designed to prevent a jury from deciding a close case on an improper basis—i.e., whether or not a party is insured. There is a danger that insurance evidence might skew the decision-making process of the jury by making it regret a possibly wrong decision against an uninsured person much more than a similar decision under identical facts against a person whose insurance status is unknown, or by making the jury regret any erroneous decision against an insured party less than it would an erroneous decision against a person whose insurance status is unknown. This is not to suggest that a jury will intentionally make a mistake. It suggests only that in close cases someone must bear the risk of error, that the presence or absence of insurance is not regarded as an appropriate guide for allocating the risk, and that it is possible that a jury will misuse insurance evidence.

7. AS 09.45.730 provides:
   A person who cuts down, girdles, or otherwise injures or carries off a tree, timber, or shrub on the land of another person or on the street or highway in front of a person's

house, or of a village, town, or city lot, or cultivated grounds, or on the commons or public grounds of a village, town, or city, or on the street or highway in front of them, without lawful authority, is liable to the owner of that land, or to the village, town, or city for treble the amount of damages which may be assessed in a civil action. However, if the trespass was casual or involuntary, or the defendant had probable cause to believe that the land on which the trespass was committed was his own or that of the person in whose service or by whose direction the act was done, or where the timber was taken from unenclosed woodland for the purpose of repairing a public highway or bridge upon the land or adjoining it, only actual damages may be recovered.

8. 15 U.S.C. § 15 (Amended September 12, 1980, Pub.L. 96–349, § 4(a)(1), 94 Stat. 1156; Dec. 29, 1982, Pub.L. 97–393, 96 Stat. 1964) provided:
   Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

Shane contends that this was error. We disagree.

Alaska Statutes 09.45.730 prohibits trespass by cutting or injuring trees or shrubs, authorizing an award of treble damages in aggravated cases, and 15 U.S.C. § 15 (1976) (amended 1980 and 1982) authorized similar damages in suits arising from violations of the federal antitrust laws. The interests protected by these statutes, plainly, have nothing in common with those involved here; they can have no relevance even as examples of punitive damages formulas. On the other hand, their potential to mislead or confuse the jury is evident.

The decision whether to include a particular instruction rests with the discretion of the trial court. *Tripp, Inc. v. Kenneth A. Murray Insurance, Inc.,* 600 P.2d 1361, 1368–69 (Alaska 1979). Counsel attempts to argue that the requested instructions were mandated by Evidence Rule 202(a). Rule 202(a) requires the trial court to take judicial notice of the common law, the Constitution and public statutes of the United States and of this state, the Alaska Administrative Code, and all rules adopted by this court, even without request by a party. There is no requirement, however, that the jury be instructed on every matter of law to which judicial notice must be given. A primary function of jury instructions is to inform the jury of the law applicable to the facts before them. *Tittle v. Hurlbutt,* 53 Hawaii 526, 497 P.2d 1354, 1357 (Hawaii 1972). The ends of justice would be poorly served, and much time and money wasted, by reading to the jury every state and federal statute, or by visiting upon it the law contained in a dozen jurisdictions. Instructions which tend to mislead, confuse, or divert the jury ought not be given. *Millenson v. Department of Highways,* 41 Colo.App. 460, 590 P.2d 979, 982 (Colo.App.1978). The trial court did not abuse its discretion by refusing to instruct the jury on statutes not applicable to the controversy.

Nor did it err in refusing to permit counsel to argue to these statutes. The trial court is vested with the discretion to control the scope and content of argument of counsel. *P.J. Frank Realty, Inc. v. Heuvel,* 284 Or. 301, 586 P.2d 1123, 1127 (Or.1978); *Hunter v. Kenney,* 77 N.M. 336, 422 P.2d 623, 625 (N.M.1967). It was not an abuse of discretion for the trial court to disallow counsel to argue to statutes having no bearing on the facts at hand and which might tend to distract or confuse the jury.[9]

The judgment is AFFIRMED.

COMPTON, J., concurs.

BURKE, C.J., with whom MATTHEWS, J., joins, dissents in part and concurs in part.

COMPTON, Justice, concurring.

I agree with the Per Curiam Opinion. I write separately to state what procedure I believe should be used when a civil action for punitive, as well as compensatory, damages proceeds to jury trial. The problem is obvious. On the one hand, evidence of the defendant's ability to respond in damages can improperly influence the jury's determination of liability. Accordingly, such evidence, and particularly evidence of insurance, is generally inadmissible at trial because of the danger of its misuse. *Poulin v. Zartman,* 548 P.2d 1299, 1300 (Alaska 1976); Alaska R.Evid. 411. On the other hand, when punitive damages are at issue, evidence of the defendant's wealth, including any insurance, is relevant to determining what amount should be awarded so as to fulfill the purposes of punishment and deterrence. Thus, in an action in which punitive damages may be awarded, there is a strong reason not to present evidence of the defendant's wealth to the jury and, at the same time, there is a need to present such evidence. Justice would be best served if both of these conflicting interests could be accommodated.

---

**9.** Any error by the trial court in refusing to take judicial notice of the proffered statutes, if it was error, was harmless, since it remained in the discretion of the trial court to forbid counsel from arguing the statutes, and to refuse to give an instruction on them.

I believe the solution to this dilemma is as obvious as the problem is. Civil Rule 42(b) specifically states that "[t]he court, in furtherance of convenience or to avoid prejudice, . . . may order a separate trial of any . . . issue . . . ." This Rule was designed to provide flexibility in handling trials, and its use in cases such as this would easily resolve the problem presented. The issue of the proper amount of punitive damages to award can simply be bifurcated from the other issues in the case. In this fashion, the liability issues could be determined without the possibility of the jury's decision being tainted by evidence of the defendant's wealth. If the jury decides in the first phase of the trial that an award of punitive damages is appropriate, a second phase of the trial, using the same jury, could then be held to determine the proper amount of the award. At this separate phase, the needed evidence of the defendant's wealth, including evidence of any insurance coverage, could be presented. The minimal additional costs and delay entailed in using this procedure would clearly be outweighed by the benefits it would confer in ensuring that the interests of justice are fulfilled.

The benefits of bifurcating the issues in this fashion so clearly outweigh any possible burdens, I am of the opinion that it would be an abuse of discretion for the court not to follow this procedure in this or similar cases.

BURKE, Chief Justice, with whom MATTHEWS, Justice, joins, dissenting in part, concurring in part.

I respectfully disagree with the court's conclusion that evidence of Rhines' insurance policy was properly excluded by the trial court. Under the circumstances, the evidence should have been admitted and I would so hold.

The purpose of introducing the insurance policy was to establish Rhines' ability to pay punitive damages. Evidence of the defendant's financial condition is admissible to determine how large a punitive damage award must be to achieve the purposes of punishment and deterrence. *Clary Insur-*ance Agency v. Doyle, 620 P.2d 194, 205 (Alaska 1980); *Sturm, Ruger & Co. v. Day,* 594 P.2d 38, 48 (Alaska 1979), *modified on rehearing,* 615 P.2d 621 (Alaska 1980), *cert. denied,* 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981). A defendant's insurance policy is a part of his financial resources and will obviously affect the degree to which a defendant is punished by a punitive damage award.

Although Evidence Rule 411 states that evidence of insurance is not admissible to determine fault or negligence, it does not require its exclusion "when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness." Alaska R.Evid. 411. The list of permissible purposes is illustrative, not exclusive, and thus "evidence of insurance is admissible for any purpose that does not involve an inference from the fact of insurance to the existence of negligence or similar wrongdoing." 23 C. Wright & K. Graham, Federal Practice and Procedure § 5365, at 454 (1980); *see also* 10 J. Moore, Moore's Federal Practice § 411.04 (1981).

Since Shane's purpose in offering the evidence of Rhines' insurance policy was not to show negligence or wrongdoing, but was offered to establish Rhines' ability to pay punitive damages, Rule 411 does not bar the admission of that evidence. *Cf.* 23 C. Wright & K. Graham, Federal Practice and Procedure § 5364, at 449 (1980) ("Finally, Rule 411 does not prohibit the use of evidence of insurance where it is relevant to the question of damages or punitive damages . . . ."). Furthermore, there is no danger that Rhines will be unfairly prejudiced by the admission of the insurance policy since he has already admitted that he was at fault, and thus the policy of Rule 411 is not compromised at all in this case. *See* Commentary to Alaska R.Evid. 411 ("The courts have . . . rejected evidence of liability insurance for the purpose of proving fault and absence of liability insurance as proof of lack of fault"). Therefore, I believe the trial court erroneously excluded

evidence of Rhines' insurance policy, and that Shane should receive a new trial.[1]

My proposed holding raises the further question of whether the new trial should be limited to the issue of punitive damages alone, or whether it should encompass, as well, the issue of compensatory damages. We have previously stated that "a partial retrial should not be ordered unless it clearly appears that the issue to be decided is distinct and separable, and can be had without injustice to any party." *Caterpillar Tractor Co. v. Beck,* 624 P.2d 790, 795 (Alaska 1981). In my judgment, the second of these conditions is not clearly met in the case at bar.

Rhines' attorney was permitted to introduce evidence of his client's financial condition. Because the trial court excluded evidence of Rhines' insurance policy, a distorted and false depiction of his financial condition was presented. I am unable to say that this false picture did not influence the jury in assessing compensatory as well as punitive damages. The trial court did not instruct or admonish the jury to consider the evidence of Rhines' financial condition only on the question of punitive damages. This, in other words, is not a case in which the parties on appeal can "pinpoint error so as to show that the error ... may have affected only one issue." *Caterpillar Tractor Co. v. Beck,* 624 P.2d at 795, *quoting from Maxwell v. Portland Terminal Railroad Co.,* 253 Or. 573, 456 P.2d 484, 486 (Or.1969). Thus, I would hold that a new trial on both issues is required.

On the remaining issues, I concur. I disagree, however, with Justice Compton's concurring opinion which states that it is an abuse of discretion *per se* for a trial judge to fail to order a bifurcated trial in cases such as this. In my view there are too many factors bearing on the propriety of a bifurcated trial which are individual to each particular case to justify laying down any *per se* rule and thus wresting discretion from the hands of the trial judge. *See* J. Ghiardi and J. Kircher, Punitive Damage Law and Practice § 12.04 (1981) and cases cited therein. I do not believe that the prejudice to a defendant that might result from the introduction of evidence of liability insurance will always justify the added time and expense of a split trial. To me the proposition that routine bifurcation in every punitive damage case is desirable seems highly questionable. Leading commentators who have examined the issue have also found this proposition to be dubious. *Id.* § 12.13; *see also* Weinstein, *Routine Bifurcation of Jury Negligence Trials: An Example of the Questionable Use of Rule Making Power,* 14 Vand.L.Rev. 831 (1961).

---

1. The jury determined by special verdict that Shane was not entitled to punitive damages. Rhines argues, and the court agrees, that any error relating to the exclusion of evidence of insurance goes to the amount of punitive damages only and, in light of the jury's finding, is therefore harmless. I disagree. Rhines introduced evidence of his financial condition precisely for the reason that it might influence jurors in their decision *whether* to award punitive damages, as well as how much to award. Evidence of the existence of liability insurance would have tended to dispel this prejudicial influence by rendering complete the picture of Rhines' financial circumstances.